erty, to the exclusion of all his relatives, and exercised said control until the time of said Earl Parish's death."

The order granted changes the complaint from the form in which it was originally constructed by the plaintiff's attorney to one for conversion simply, without permitting the pleader to plead the facts as to the condition of Earl Parish and as to the acts done by the defendant upon which the allegations of the complaint originally could be sustained.

I think abundant authority for the complaint as drawn is found in Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255, which proceeds somewhat along the same line, although the actions are not identical. While the fraud and deceit on the part of the defendant to Earl Parish could not be proved by a single act, it is competent for the plaintiff to place the court in possession of all the facts surrounding Earl Parish at the times, and surrounding the defendant at the times, referred to, or at about the time, or preceding the transaction, or following it, for a reasonable time, from which the plaintiff might ask the court to infer what was the character of the transaction or transactions between the parties, in order that the court may render an intelligent and just judgment thereon. The rule as stated in Cowee v. Cornell et al., 75 N. Y. 99, 31 Am. Rep. 428, is very applicable here:

"It may be stated as universally true that fraud vitiates all contracts; but as a general thing it is not presumed, but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood. This doctrine is well settled."

I think that the complaint as originally framed stated a good cause of action, and that the pleader should be permitted to establish it, if he can, upon a trial.

It follows that the order appealed from should be reversed, with $10 costs and disbursements to the plaintiff. All concur, except HOUGHTON, J., who dissents.

---

## VIBBARD v. KINSER CONST. CO.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

APPEAL AND ERROR (§ 1060*)—REVIEW—PREJUDICIAL ERROR—MISCONDUCT OF COUNSEL.

In an action for death of a servant, certain evidence as to changes made after the injury was stricken out as improper, and of a character that might prejudice the other party. At a second trial of the case plaintiff's attorney asked a question of the same character and tending to in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

troduce the same improper answer. *Held* that, where the case was evenly balanced, the mere exclusion of the evidence so introduced was insufficient to cure the error, and a reversal for such misconduct is proper.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1060.*]

Betts, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Dora Vibbard, as executrix, against the Kinser Construction Company. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

See, also, 130 N. Y. Supp. 837.

Argued before SMITH, P. J., and KELLOGG, SEWELL, BETTS, and HOUGHTON, JJ.

Rockwood, McKnight & McKelvey (L. B. McKelvey, of counsel), for appellant.

Edgar T. Brackett (James A. Leary, of counsel), for respondent.

JOHN M. KELLOGG, J. The plaintiff's intestate met his death by the overturning of a steam industrial locomotive crane which he was operating for the defendant upon its railroad tracks, and in the opinion of the jury his death was caused by the negligence of the defendant, while he was free from contributory negligence. The appellant challenges the determination of the jury on the ground that it is against the evidence, and that it was influenced by extraneous matters which should not have appeared. The alleged negligence consists in the improper ballasting of the crane and the improper and dangerous condition of the track; while the appellant contends that the crane overturned by reason of the reckless manner in which the intestate was operating it at the time, and that the crane was properly ballasted and the track in proper condition, and that, if the track was in an improper condition, the intestate, a skilled operator, who had been engaged upon the track for many days, knew it, and was called upon to guard against such condition. The plaintiff's evidence shows that the track was uneven, laid upon clay or mud, and that the rail towards where the crane tipped was from four to six inches lower than the other rail; and until the appellant's evidence is considered it seems plain that the track was negligently maintained and that its bad condition contributed to the accident. The defendant's evidence tends strongly to show that the track was well ballasted, well laid, the rails substantially even, and that its condition was the best, and that no negligence can be charged against the defendant on account of its condition.

It is difficult to arrive at the real truth where the evidence is so circumstantial and contradictory, and while, perhaps, a judge or referee would have great difficulty in finding that the plaintiff had fairly sustained the burden of proof, upon careful consideration we are not prepared to say that the verdict of the jury is against the evidence. Neither can we say that the verdict of the jury rested solely upon the evidence. It is difficult to say how far the jury may have been in-

fluenced by matters which were improperly called to their attention. These matters, in a sense, were vital; for if, after the accident, the track was in the condition suggested by them, it is clear that the defendant's evidence as to the condition of the track is entirely unreliable.

The plaintiff's witness Thombley swore as to the condition of the track at the time, before and after the accident. It appeared that he worked three weeks after the accident with Hunt upon the track. The plaintiff then asked, "What work did you do with Hunt?" to which he answered:

"I was employed to carry the cable to pull the cars from one track to the other. I was also employed for quite a while to go backward, to walk and watch the crane, to see she did not get off the track."

The defendant's counsel moved to strike out the answer, and it was stricken out. This case had previously been tried, and a verdict in favor of the plaintiff set aside by the trial judge. Upon that trial the plaintiff asked the witness Kinser if he did not see Trombley walking in front of this crane and looking over the track, to see if it operated all right for day after day after this accident took place. The question was objected to as improper, and the objection sustained. It is therefore evident that the plaintiff knew what Trombley would answer as to the services which he was rendering on the track after the accident. Upon the former trial the witness Trombley was asked:

"Were you employed to walk ahead of this crane, when it was operating over that railroad right after the accident? A. After the accident. Q. Not before? A. No, sir. Q. By whom were you employed?

"Defendant's Counsel: I move to strike out that testimony as incompetent, immaterial, and irrelevant, and improper.

"The Court: It is so immaterial and so irrelevant and improper that the mere asking of the question, Mr. Leary, might prejudice you."

The defendant's counsel asked to withdraw a juror, and that it be declared a mistrial. The plaintiff's counsel said he was surprised by the answer, and the court remarked:

"When such questions have been asked, even without objection, and have not been answered at all, it has been held reversible error."

It then cautioned the jury to exclude from their minds anything that took place after the accident.

The plaintiff's witness Lee, on this trial, swore that in his judgment the southerly track was three or four inches lower than the northerly track; that the ballast he observed was clay and natural soil, with some cinders; that between some of the ties it was filled, and between some it was not filled. Upon his redirect examination the plaintiff's counsel asked him:

"Did you see them put crushed stone in there between the ties and rails after the accident?"

This was objected to, and excluded, and the defendant asked to withdraw a juror on account of the improper question. The court declined to declare it a mistrial, and admonished the attorney he must not do it again.

Upon the present trial plaintiff's counsel asked the witness Hunt, while questioning with regard to a statement he had made out of court to counsel:

"Did you also say something after the accident that you quit using one part of the track because it was bad, and that they would run on one track and had a cable to the cars on the other; that it was poorly built?

"Defendant's Counsel: Objected to, that it was an attempt to introduce facts occurring after the accident, and we ask the court to withdraw a juror."

The court declined to do that, but excluded the evidence.

These improper questions suggested to the jury in the strongest manner that the defendant after the accident recognized that the track was in a dangerous condition, and it put the defendant in a false position to have to object to and exclude such evidence. Much must be allowed for inadvertence and the overzeal of counsel; but when we consider the occurrences upon the former trial, there is not the same ground for charity that there might be if such occurrences were not in fact a substantial repetition of former incidents. Upon the former trial and upon this trial counsel had been warned that he was treading upon dangerous ground. In a case so evenly balanced, it is apparent that these occurrences must have had an influence upon the mind of the jury, and it is impossible to tell how far this verdict rests upon such suggestions.

The judgment and order are therefore reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except BETTS, J., who dissents.

---

### ROONEY v. BROGAN CONST. CO.

(Supreme Court, Appellate Division, Second Department. November 17, 1911.)

MASTER AND SERVANT (§ 280*)—DEATH OF BUILDING EMPLOYÉ—EVIDENCE—WEIGHT.

    In an action for death of a building employé, caused by his stumbling and falling through an opening in the floor, verdict for plaintiff *held* against the weight of the evidence, on the theory that he assumed the risk.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 280.*]

    Rich, J., dissenting.

Appeal from Trial Term, Kings County.